UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS F. CLASBY, JR.,<br><br>Defendant | Criminal No. 25cr10003<br><br>Violations:<br><br>Count One: Theft Concerning Programs Receiving Federal Funds; Aiding and Abetting<br>(18 U.S.C. §§ 666(a)(1)(A) and 2)<br><br>Counts Two-Three: Wire Fraud; Aiding and Abetting<br>(18 U.S.C. §§ 1343 and 2)<br><br>Counts Four-Eight: Mail Fraud; Aiding and Abetting<br>(18 U.S.C. §§ 1341 and 2)<br><br>Counts Nine-Twelve: Interstate Transportation of Stolen Property; Aiding and Abetting<br>(18 U.S.C. §§ 2314 and 2)<br><br>Forfeiture Allegations:<br>(18 U.S.C. § 981(a)(1)(C); and 28 U.S.C. § 2461) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1.      The defendant Thomas F. Clasby, Jr. (CLASBY) was a resident of Fitchburg, Massachusetts. CLASBY served as the Director of the Quincy, Massachusetts Department of Elder Services (Elder Services) between approximately 1999 and April 2024.[1]

---

[1] CLASBY briefly resigned from the position in or around October 2007, but was reappointed in or around January 2008.

1

2. Elder Services operated in the Kennedy Center, located at 440 East Squantum Street in Quincy, Massachusetts (the Kennedy Center). Individuals who were at least 60 years old could apply for membership to the Quincy Council on Aging (the COA). COA Members were eligible to participate in events organized by Elder Services, and to access the Kennedy Center, including a café operated by Elder Services.

3. For each of calendar years 2020 through 2024, the City of Quincy, Massachusetts (the City) received more than $10,000 from the United States government under a federal program involving a grant, subsidy, loan, guarantee, insurance, and other form of assistance. For example, the City annually received an entitlement from the Community Development Block Grant (CDBG) program run by the U.S. Department of Housing and Urban Development (HUD). For each of calendar years 2020 through 2024, the total CDBG funds awarded to Quincy was in excess of $1.5 million. Disbursements from the City's CDBG program included over $10,000 expended on Senior Services in each of calendar years 2020 through 2024.

CLASBY's Invoice Fraud

4. Between in or around 2020 and in or around April 2024, CLASBY used the City's purchasing process to pay personal expenses and generate cash for himself.

5. The City uses a software product called Munis (Munis), to manage its financial functions, including procurement. Since at least 2020, for Elder Services to use City funds to purchase goods or services, a requisition was required to be inputted in Munis by CLASBY or his Assistant Director.

6. Any Elder Services requisition was required to be approved by CLASBY, the City's Finance Department, and the City's Purchasing Department. A Purchase Order would then

2

be generated in Munis for the goods or services supplied to Elder Services. After the goods or services were supplied, the vendor would provide an invoice to Elder Services. CLASBY would then approve, or have his Assistant Director approve using CLASBY's credentials, the invoice for payment, and the invoice would go to the Finance Department for final approval and payment.

7. The City paid vendor invoices by check and sent the checks to vendors by United States Mail, unless instructed otherwise.

*CLASBY Caused the City to Pay His Personal Expenses*

8. Beginning at least as early as May 2019, CLASBY submitted requisitions for goods and services that were not provided to Elder Services, causing the City to pay for goods and services that were in fact provided to CLASBY, his family and his friends. For example:

a. In or around May 2019, CLASBY caused the City to purchase a snowblower for $1,912 from a vendor in Quincy, Massachusetts. In or around December 2019, CLASBY caused the City to pay approximately $200 for ramps to load items into a truck and a tie-down strap. CLASBY subsequently used his City-owned truck to remove the snowblower from City property.

b. Between in or around June 2020 and in or around June 2022, CLASBY hired a Weymouth, Massachusetts music studio to produce recordings of CLASBY singing songs for his wife and others. On or around June 6, 2020, CLASBY requested that the owner of the studio (the Owner) send CLASBY an invoice for 170 hours of studio time, and instructed the owner to "Just have it marked Senior Musical Workshop." The Owner submitted the invoice, totaling $5,950, to CLASBY, who arranged for the City to pay the invoice on or about June 19,

2020. In or around June 2022, CLASBY had the Owner bill "City of Quincy Dept. of Elder Services" $3,000 for additional studio time with an engineer. CLASBY arranged for the City to pay the second invoice on or about July 11, 2022. The studio never provided any goods or services to the City or to Elder Services, only to CLASBY personally.

      c.      Between in or around May 2022 and April 2024, CLASBY began ordering steak tips for himself from the Kennedy Center café vendors. Consequently, the City paid four invoices submitted by vendors for steak tips that CLASBY took for himself in the following approximate amounts: (i) thirty pounds of bourbon steak tips for $393 in or around May 2022, (ii) $591 for forty-five pounds of bourbon steak tips in or around November 2022, (iii) $413 for thirty pounds of bourbon steak tips in or around August 2023, and (iv) $839 for forty-eight pounds of bourbon steak tips in or around April 2024.

      d.      In or around December 2022, CLASBY caused the City to pay approximately $143 for clothing embroidered with the logo of the Franciscan University of Steubenville, from where CLASBY received his undergraduate degree in or around 1995.

      e.      Between in or around December 2022 and in or around February 2023, CLASBY caused the City to pay approximately $810 for twenty-seven fleece vests bearing the phrase "Men of Divine Mercy," which CLASBY distributed to members of the men's Catholic organization to which he belonged.

      f.      In or around February 2023, CLASBY used a cleaning company to clean an apartment where CLASBY's longtime female friend (Individual #1) lived, and submitted the invoice to the City. In order to assure the City paid the cleaning vendor's $325 invoice,

CLASBY falsely represented in Munis that the service was "Sanitizing" for the "Council on Aging."

   g. In or around May 2023, CLASBY caused the City to pay approximately $4,800 for a 2005 Toyota Prius which CLASBY had titled in his name and gave to Individual #1 for her personal use. To secure payment from the City for the Prius, CLASBY prepared and submitted to the City a fake invoice and a fake job work order purporting to be from the vendor which falsely indicated that the $4,800 charge was for rebuilding an engine for one of the Elder Services Ford Econoline vans.

   h. In approximately March 2024, the Prius suffered damage, and CLASBY submitted the approximately $1,187.71 charge for repairs to the City with an invoice that CLASBY caused to be created, indicating falsely that the vendor had done work on a City-owned 2019 Ford Ranger. Based on the false invoice, the City paid for the Prius repairs.

   i. Between March 2022 and March 2024, CLASBY caused the City to pay at least $1,125 to one of the City's towing vendors for services provided for the Prius and another vehicle belonging to Individual #1.

   j. In or around April 2023, CLASBY caused the City to pay approximately $1,658 for a signature, lacquered, mounted, and framed self-portrait which CLASBY intended to give to his wife.

   k. In or around December 2023, CLASBY caused the City to pay approximately $595 for an electric fryer that CLASBY gave to his son.

   l. In or around January 2024, CLASBY caused the City to pay approximately $1,320 to reupholster a loveseat owned by CLASBY.

*CLASBY Used Fake Invoices to Generate Cash*

9. Beginning at least as early as May 2022, CLASBY also arranged for the City to pay approximately $38,134 to a New York consulting company (the Company) owned by CLASBY's friend (Individual #2). The Company never provided goods or services to any City department.

10. CLASBY manufactured Company invoices that falsely stated the Company had provided classes and supplies to Elder Services, keeping each invoice below $10,000 to avoid triggering state bidding requirements and increased scrutiny from the City's procurement officials.

11. Based on the false invoices, the City sent checks to the Company in New York via United States Mail, and Individual #2 cashed the City checks and provided the vast majority of the cash to CLASBY.

12. CLASBY took the following actions, among others, to execute this cash-generating scheme:

    a. On or about May 31, 2022, the City issued a check in the amount of $8,942 to the Company based on a fake invoice submitted by CLASBY. Individual #2 received the check by United States Mail and cashed it in New York. On or about July 1, 2022, Individual #2 drove to Framingham, Massachusetts with approximately $6,400 in cash. Individual #2 delivered the cash to CLASBY in a brown paper bag at a rest stop along the Massachusetts Turnpike.

    b. On or about July 11, 2022, the City issued a check in the amount of $2,500 to the Company based on a fake invoice submitted by CLASBY. Individual #2 received the

check by United States Mail and deposited it into his bank account in New York. Thereafter, Individual #2 transferred at least $1,100 to CLASBY using Cash App and Zelle.

   c. On or about January 6, 2023, the City issued a check in the amount of $8,942 to the Company based on a fake invoice submitted by CLASBY. Individual #2 received the check by United States Mail and cashed it in New York. On or about February 4, 2023, CLASBY drove from Massachusetts to the Long Island Ferry terminal in Bridgeport, Connecticut, collected the cash from Individual #2—who had taken a ferry from Port Jefferson, New York the same day—and returned to Massachusetts.

   d. On or about May 19, 2023, the City issued a check in the amount of $8,550 to the Company based on a fake invoice submitted by CLASBY. Individual #2 received the check by United States Mail and cashed it in New York. On or about June 4, 2023, CLASBY drove from Massachusetts to Queens, New York, collected the cash from Individual #2, and returned to Massachusetts.

   e. On or about January 8, 2024, the City issued a check in the amount of $9,200 to the Company based on a fake invoice submitted by CLASBY. Individual #2 received the check by United States Mail and cashed it in New York. On or about January 20, 2024, CLASBY drove from Massachusetts to Queens, New York, collected the cash from Individual #2, and returned to Massachusetts.

CLASBY's Theft of Cash from the Kennedy Center

13. Since at least as early as 2014, every City department has been required to remit any cash and checks it receives to the City's Treasurer-Collector's Office on a regular basis for deposit into the appropriate accounts. The cash and checks must be accompanied by a Schedule

of Departmental Payment to Treasurer, which is also referred to as a "Turnover Sheet." A Turnover Sheet should contain the account number for deposit and an itemization of cash and checks received during the relevant time period. The City's department heads are responsible for ensuring the Turnover Sheets are accurate, and that the Turnover Sheets, cash and checks are delivered to the Treasurer-Collector's Office.

14. Between at least as early as 2014 and April 2024, one of the deposit accounts for Elder Services was the "Donation Account," to which funds remitted for classes, activities, newsletter subscriptions, and donations to Elder Services were credited. Such funds were accepted at the Kennedy Center by workers at the front desk in the form of cash and checks, and cash receipts were generally placed in envelopes with notations including the date of receipt and the purpose of the funds. For example, an envelope containing fees for a yoga class might contain the date and read: "$100 yoga," and an envelope for the café receipts might contain the date and read: "$79 café." Elder Services did not maintain a log of payments received at the front desk or in the café.

15. Between at least as early as 2014 and April 2024, CLASBY was responsible for ensuring that cash and checks collected by Elder Services were properly remitted to the Treasurer-Collector's Office with Turnover Sheets for deposit. While CLASBY delegated the completion of the Elder Services Turnover Sheets to various administrative staff, CLASBY signed or directed others to sign his name to every Turnover Sheet submitted to the Treasurer-Collector's Office for the Donation Account during the relevant time period.

16.     In or around March 2021, CLASBY purchased a depository safe for the Kennedy Center with City funds. Anyone could deposit items into the safe through a deposit hopper, but only someone with the combination to the safe could remove items from the safe.

17.     The Kennedy Center reopened on or about June 1, 2021, after an extended closure due to the COVID-19 Pandemic. Around that time, CLASBY instructed Kennedy Center employees that all cash receipts collected by Kennedy Center employees must be deposited into the safe going forward.

18.     From approximately June 1, 2021 through April 18, 2024, Elder Services collected over $57,000 in cash for non-transportation related Kennedy Center offerings, and an unknown amount of cash from the Kennedy Center café. As CLASBY had instructed, the employees of the Kennedy Center placed the cash receipts into the safe.

19.     From approximately June 1, 2021 through April 18, 2024, CLASBY accessed the Kennedy Center safe using the combination, removed the cash receipts from the safe, and failed to remit any of the cash receipts to the Treasurer-Collector's Office for deposit into the Donation Account. Instead, CLASBY stole most, if not all, of the cash receipts collected at the Kennedy Center for deposit into the Donation Account between approximately June 1, 2021 and April 18, 2024.

## COUNT ONE
### Theft Concerning a Program Receiving Federal Funds; Aiding and Abetting
(18 U.S.C. §§ 666(a)(1)(A) and 2)

The Grand Jury charges:

20. The Grand Jury re-alleges and incorporates by reference paragraphs 1-19 of this Indictment.

21. From in or about 2020 through in or about 2024, in the District of Massachusetts, and elsewhere, the defendant,

### THOMAS F. CLASBY, JR.,

being an agent of an organization, namely, the City of Quincy, Massachusetts, embezzled, stole, obtained by fraud and otherwise without authority knowingly converted to the use of a person other than the rightful owner and intentionally misapplied property valued at $5,000 or more, which included goods, services, and funds, that was owned by, and was under the care, custody, and control of such organization, the City of Quincy, Massachusetts, which received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan guarantee, insurance or other form of Federal assistance in any one-year period between 2019 and 2024.

All in violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

## COUNTS TWO-THREE
## Wire Fraud; Aiding and Abetting
## (18 U.S.C. §§ 1343 and 2)

The Grand Jury further charges:

22. The Grand Jury re-alleges and incorporates by reference paragraphs 1-19 of this Indictment.

23. From in or about 2019 through in or about 2024, in the District of Massachusetts, and elsewhere, the defendant,

THOMAS F. CLASBY, JR.,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud the City of Quincy, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 2 | June 6, 2020 | E-mail from CLASBY at approximately 1:47 p.m. using email account TCLASBY@quincyma.gov to Owner of music studio |
| 3 | May 11, 2022 | Text from CLASBY at approximately 12:27 p.m. from phone number ***-***-4940 to Individual #2 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

11

## COUNTS FOUR-EIGHT
Mail Fraud; Aiding and Abetting
(18 U.S.C. §§ 1341 and 2)

The Grand Jury further charges:

24. The Grand Jury re-alleges and incorporates by reference paragraphs 1-19 of this Indictment.

25. From in or about 2020 through in or about 2024, in the District of Massachusetts, and elsewhere, the defendant,

THOMAS F. CLASBY, JR.,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did, for the purpose of executing the scheme to defraud the City of Quincy, knowingly cause to be delivered by mail and by any private and commercial interstate carrier according to the direction thereon, the following:

| Count | Approximate Date | Description |
|---|---|---|
| 4 | May 31, 2022 | Check Number 545363, made payable to Individual #2 DBA the Company in the amount of $8,942, drawn on an account held in the name of the City of Quincy, Accounts Payable |
| 5 | July 11, 2022 | Check Number 547752, made payable to Individual #2 DBA the Company in the amount of $2,500, drawn on an account held in the name of the City of Quincy, Accounts Payable |
| 6 | January 6, 2023 | Check Number 558879, made payable to Individual #2 DBA the Company in the amount of $8,942, drawn on an account held in the name of the City of Quincy, Accounts Payable |
| 7 | May 19, 2023 | Check Number 566073, made payable to Individual #2 DBA the Company in the amount of $8,550, drawn on an account held in the name of the City of Quincy, Accounts Payable |
| 8 | January 8, 2024 | Check Number 579611, made payable to Individual #2 DBA the Company in the amount of $9,200, drawn on an account held in the name of the City of Quincy, Accounts Payable |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS NINE—TWELVE
Transportation of Stolen Property; Aiding and Abetting
(18 U.S.C. §§ 2314 and 2)

The Grand Jury charges:

26. The Grand Jury re-alleges and incorporates by reference paragraphs 1-19 of this Indictment.

27. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

THOMAS F. CLASBY, JR.,

did transport, transmit, and transfer or cause to be transported, transmitted, and transferred in interstate commerce, a security stolen or taken by fraud, to wit, the cash proceeds of checks from the City of Quincy to Individual #2 DBA the Company, of the value of $5,000 or more, knowing the same to be stolen or taken by fraud:

| Count | Approximate Date | Description |
|---|---|---|
| 9 | July 1, 2022 | Individual #2 transported approximately $6,400 in cash from New York to Massachusetts, where he gave the cash to CLASBY |
| 10 | February 4, 2023 | Individual #2 transported approximately $8,942 in cash from New York to Connecticut, where he gave the cash to CLASBY |
| 11 | June 4, 2023 | CLASBY transported approximately $8,550 in cash from New York to Massachusetts |
| 12 | January 20, 2024 | CLASBY transported approximately $9,200 in cash from New York to Massachusetts |

All in violation of Title 18, United States Code, Sections 2314 and 2.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Grand Jury further finds:

28. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Sections 666, 1341, 1343 and 2314, set forth in Counts One through Twelve, the defendant,

THOMAS F. CLASBY, JR.,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

29. If any of the property described in Paragraph 28, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 28 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

KRISTINA E. BARCLAY
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: January 7, 2025
Returned into the District Court by the Grand Jurors and filed.

/s/ Leonardo T. Vieira, 12:53pm

DEPUTY CLERK